```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

**MARK COLEMAN**                                           **CIVIL ACTION**

**VERSUS**                                                 **NO. 06-2518**

**MARGIE WHITNEY, <u>ET</u> <u>AL</u>**                    **SECTION "B"(5)**


                    <u>REPORT  AND  RECOMMENDATION</u>

Plaintiff, Mark Coleman, currently incarcerated in Allen Correctional Center ("Allen"), has filed this <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u> civil rights complaint with regard to the medical treatment, or lack thereof, he received during his earlier incarceration at the Terrebonne Parish Criminal Justice Complex ("TPCJC"). Named as defendants in this action are TPCJC medical personnel Margie Whitney, Michele Robicheaux, and Richard Neal. This matter is before the court pursuant to defendants' motion for summary judgment.

**I.   STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential elements of his claim.  Id., citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  Celotex Corp., 477 U.S. at 323.

**II.   ANALYSIS**

Plaintiff sets forth in his complaint, which he signed on April 11, 2006, that he has "suffered [for] 75 days with a severe toothache" and has requested relief from prison medical personnel on several occasions, but "to no avail".  Plaintiff claims that defendants have "totally disregarded" his "medical problems".  Plaintiff, however, also alleges that defendants, in response to his complaints of pain associated with his toothache, gave him too much pain medication, specifically, "245 Tylenols in 11 days".  According to plaintiff, such a heavy dose of pain medication was

"extremely poison[ous]" to his liver. Finally, plaintiff points to the fact that TPCJC has the capacity to house "800 inmates", but allegedly has only "one dentist" which, according to plaintiff, has resulted in a waiting list to see the dentist which is "6 months long". (Rec. doc. 1, p. 5).

Defendants contend, and plaintiff does not dispute, that plaintiff "was a pretrial detainee for part of the time period about which he complains." (Rec. doc. 17, p. 4). However, whether plaintiff was a pretrial detainee or a convicted inmate, the standard of liability is the same for the alleged episodic acts or omissions of TPCJC medical personnel in failing to heed plaintiff's numerous toothache complaints. The Fifth Circuit, in *Hare v. City of Corinth,* 74 F.3d 633, 650 (5th Cir. 1996), held:

> "(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk."

Severin v. Hunter, 2007 WL 1592976, *5 (E.D.La. 2007), quoting Hare, supra.

In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court established that a convicted inmate may succeed on a claim for damages under 42 U.S.C. §1983 for inadequate medical care only if he demonstrates that prison officials have been "deliberately

3

indifferent" to his "serious medical needs". "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to medical claims. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir.1994).

Plaintiff must satisfy two requirements to demonstrate that defendants violated his constitutional rights. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir.1993).

Next, plaintiff must establish that defendants possessed a culpable state of mind. Farmer, 511 U.S. at 838, citing Wilson, 501 U.S. at 298. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough.

The officer must have the subjective intent to cause harm." <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir.2003). If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 2003).

In the instant matter, plaintiff has clearly failed to meet his two-prong burden of proof. First, it cannot be concluded that the condition petitioner describes, a toothache, presented a serious medical need that posed a substantial risk of harm during his incarceration at TPCJC.[1] Second, assuming <u>arguendo</u> that plaintiff's toothache constituted a serious medical need, he has failed to show the requisite deliberate indifference on the part of prison officials.

A review of plaintiff's medical records, attached to defendants' summary judgment motion as exhibit 2, reflects that plaintiff was admitted into TPCJC on January 21, 2006, and first complained about a toothache on March 10, 2006.[2] Specifically,

---

[1] In his opposition (rec. doc. 21), which plaintiff has labeled as a "Motion for Summary Judgement [sic] – Statement of Undisputed Facts – Rule 56(c)", he states that the doctor prescribed medication "for an abscessed tooth". However, as discussed <u>infra</u>, a review of the doctor's notations, following his April 28, 2006 examination of plaintiff, reflects that he diagnosed plaintiff as suffering from a large cavity, not an abscessed tooth.

[2] Plaintiff's incarceration at TPCJC on January 21, 2006, was not his first. Plaintiff's TPCJC medical records date back to August, 2000. A review of said records reflects that plaintiff's first complaint about a toothache was on November 2, 2004, at which time he wrote:  "Have sever [sic] toothach [sic], turning into

plaintiff informed that he had a severe toothache and needed to be placed on the "dental list".  In response, plaintiff was provided with a "dental form" and was informed that the prison facility had over-the-counter pain medication which he could purchase. Plaintiff executed his dental request form on or about March 14, 2006, providing that he had "an upper molar cavity that's very painful" and that he had this problem for "3 months".  He further advised that, despite his alleged pain, he had not notified prison personnel at its onset, although he had seen medical staff on other occasions and for other reasons in the interim.  On that date plaintiff was given the option of seeing his own personal dentist, at his expense, in order to expedite his treatment.

On March 16, 2006, plaintiff executed a second medical request form, stating:  "Have toothach[e] - filling fell out".  On March 17, 2006, plaintiff was examined by prison medical personnel who observed a "black colored substance to center of last molar and [second] to last molar", then discussed with plaintiff the lengthy waiting period associated with seeing a dentist at the prison and

---

absess [sic], please put me on dental list, in lots of lots of pain, may need antiboitics [sic]".  While any medical complaints predating April 11, 2005, a year before he submitted the instant action, would be prescibed, see <u>Freeze v. Griffith</u>, 849 F.2d 172, 175 (5th Cir. 1988), such early complaints clearly are not the subject matter of the present Section 1983 action.  Plaintiff sets forth in the instant lawsuit that the toothache which serves as the basis of his latest civil rights action arose "75 days" earlier, i.e., on or about January 27, 2006, shortly after his most recent, January 21, 2006 arrival date at TPCJC.

informed that plaintiff could set up an appointment to be seen by a private dentist.  Thereafter, plaintiff was provided with Oragel and Tylenol, along with Naproxen.

On March 18, 2006, plaintiff executed another medical request form, informing that his mouth was "infected", that an abscess was "forming" on his "lower back molar" and he needed "shots to clear up infections".  An examination performed by prison medical personnel on that same date revealed no evidence that plaintiff was suffering with an abscessed tooth.

On March 20, 2006, plaintiff again complained that he needed shots for an infected, abscessed tooth.  Plaintiff was again examined by medical personnel on the date he lodged his complaint and no evidence of an abscess was found.

On March 24, 2006, plaintiff requested to see a doctor for a "severe infection on [his] upper right molars".  Plaintiff was examined on that same date and no abscess or infection was observed.  It was noted that plaintiff was currently taking Naproxen for his dental pain and that he could request epsom salt to be used to rinse his mouth.

On either March 25 or March 26, 2006,[3] plaintiff complained not only of an infection in his mouth, but also stated that his right ear was now "swollen and infected".  In response, plaintiff

---

[3]Plaintiff's medical request form is dated "3/26/06", but medical personnel's response to said request is dated "3-25-06".

was examined by medical personnel who found no sign of infection, nor was there any redness or swelling in the areas where plaintiff alleged to be experiencing pain. In response to plaintiff's complaint, however, his dosage of pain medication was increased.

On March 30, 2006, plaintiff complained that he had "lost complete hearing" in his left ear and that the vision in his left eye was "almost gone". He also stated that he had been suffering with a severe toothache for 46 days. On March 31, 2006, plaintiff's case was referred to a nurse supervisor who noted that there was no evidence that plaintiff was suffering from an abscess and that he had been placed on the waiting list to be examined by a dentist.

On April 1, 2006, plaintiff requested that his prescription for Aleve be renewed, complaining that he was still experiencing severe pain as a result of a toothache. Plaintiff's examination by medical personnel revealed no abscess, no swelling and no drainage and he was advised to try over-the-counter medication for his pain.

Plaintiff also complained, on April 1, 2006, that his throat was "raw and infected from soaking [his] mouth with soap" and using "20 tubes of toothpaste to kill this serious toothace [sic] pain". On April 2, 2006, plaintiff was examined by medical personnel who advised him to use epsom salt, rather than soap, to gargle.

On April 3, 2006, plaintiff complained about an "infection in [his] throat". Medical personnel who examined plaintiff noted that

he was able to talk without any problem and advised plaintiff to gargle with epsom salt.

On April 4, 7, and 8, 2006, plaintiff executed complaints that he had a sore throat, an infection, and that an abscess was forming on the side of his tongue. In response, plaintiff was examined by medical personnel. In connection with these examinations, no infection and no abscess were observed and plaintiff was advised to gargle with epsom salt.

On April 12, 2006, plaintiff executed an inmate request form inquiring whether there was only one dentist, Dr. David Blythe, assigned to meet the needs of all TPCJC inmates and if that was the reason he had been waiting "2 1/2 months" to see a dentist. On that same date, defendant Margie Whitney executed a response, informing that plaintiff had "turned in" his dental request form approximately one month earlier, on March 13, 2006, and that TPCJC refers its prisoners to two dentists, Dr. Blythe and Dr. Tyler.

On April 24 and 25, 2006, plaintiff requested pain medication in connection with the pain he was experiencing as a result of his toothache. On April 25, 2006, plaintiff was prescribed 220 mg of Aleve.[4] The following day, April 26, 2006, plaintiff again

---

[4] In the interim between April 12th and April 24th, plaintiff complained of sore throat pain on April 13th and received Tylenol 500 mg. On April 17th, he complained of a history of degenerative disc disease for which he also sought pain medication. As this could not be verified in his chart, he was advised to take over-the-counter medication to relieve his discomfort.

complained that he needed pain medication in connection with his toothache pain.  In response, medical personnel noted that plaintiff, on April 25, 2006, "was placed on Aleve 220 mg".

On April 25, 2006, plaintiff executed a second inmate request form, informing that he had "been waiting for month's [sic] to have this tooth extracted and x-rayed", that he had poisoned his liver "from the high dosages of Tylenol" and that he needed "to be examined by a certified R/N".  The following day, medical personnel advised him that he could have a private dentist examine him, that the prison's dentists saw patients on a "first come first serve" basis, and that his receipt of over-the-counter Tylenol two times a day was not considered to be a high dosage.  It was noted that plaintiff was then currently on Aleve 220 mg. three times a day for pain.

On April 27, 2006, plaintiff complained that the Aleve he was receiving was "not helping his tooth pain".  The following day, plaintiff was examined by a physician who diagnosed that plaintiff had a large cavity in his left molar.  The doctor increased plaintiff's dosage of Aleve and prescribed penicillin along with other medication.

Prior to his transfer from TPCJC, plaintiff lodged three more complaints concerning toothache pain, on May 14, 17 and 20, 2006.  He also lodged complaints about pain to his knee, leg and back.  In response to each complaint, plaintiff was promptly seen by medical

10

personnel who continued his physician prescribed medications and, in response to his dental issues, informed that he had an upcoming appointment.

Based upon the above, it is clear that plaintiff received constitutionally adequate medical attention while incarcerated at TPCJC insofar as the named defendants are concerned.  Prison officials responded to his complaints and he was examined by medical personnel who considered and reviewed his conditions, provided him with medication and placed him on the list to be examined by a dentist.  Other medical problems of which plaintiff complained were also addressed.  While plaintiff may be unhappy with the efficacy of his treatment, he has been unspecific as to why these particular defendants have caused him damage.  There must be a causal connection between the acts or omissions of a given defendant and harm caused to a plaintiff. Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983); Douthit v. Jones, 641 F.2d 345 (5th Cir. 1981). That causal link is missing here.

Plaintiff is clearly dissatisfied with the wait associated with receiving dental treatment at TPCJC.  However, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under §1983.  It is well-established that "mere delay or a mere gap in receiving care is not in and of itself a constitutional violation. Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993); Wesson v. Oglesby,


910 F.2d 278, 284 (5th Cir.1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir.1985).  Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.  Wilson, 501 U.S. at 298.  The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.' ").  No such permanent loss resulting from delay has been alleged in this case.[5]

Lastly, plaintiff was, at all times, given the option of going to a dentist of his own choice earlier by medical personnel at the

---

[5] In his opposition (rec. doc. 21), plaintiff cites three cases, Matzker v. Herr, 748 F.2d 1142, 1147-1148 (7th Cir. 1984), Hunt v. Dental Department, 865 F.2d 198, 200-201 (9th Cir. 1989), and Dean v. Coughlin, 623 F.Supp. 392, 402-404 (S.D. N.Y. 1985), in support of his contention that defendants' action or lack of action in connection with his toothache complaints constituted deliberate indifference to his serious medical needs.  However, all three cases are distinguishable from the instant action.  Matzker and Hunt involved situations where the prisoners suffered permanent damage, in the form of broken teeth, due to the lack of dental care, and waited three months or more for dental treatment.  In plaintiff's case, he suffered no permanent injury and he was transferred from TPCJC approximately two and a half months after first complaining about a toothache.  Dean involved a situation where prisoners often waited over a year before seeing a dentist and even longer before receiving treatment.  Plaintiff does not assert nor is there any evidence to suggest that prisoners at TPCJC wait such a significant period before receiving dental care.

Terrebonne Parish jail. He has not established that this was not a viable option of which he could have availed himself. The Court further notes that, following plaintiff's transfer from TPCJC, he was housed in Riverbend Detention Center in Lake Providence, La. A review of plaintiff's medical records from that institution reveals that while he was scheduled for a dental examination at that facility, one did not take place. Nor was he treated for an abscessed tooth or any mouth infection while housed there, leading credence to the findings of medical personnel in Terrebonne Parish that he did not suffer from a condition of this magnitude. Neither does it appear that plaintiff continued to lodge the grievance forms pertaining to his dental issues once he arrived at Riverbend Detention Center. Additionally, the Court notes that, following a review of plaintiff's medical records from TPCJC, Riverbend Detention Center and Allen Correctional Center, there is no suggestion that plaintiff is suffering from damage to his liver caused by excessive use of NSAIDS such as aspirin, Aleve or Tylenol.

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that defendants' motion for summary judgment be **GRANTED**, and plaintiff's action be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. See Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  10th   day of   August  , 2007.

                                               /s/ Alma L. Chasez
                                               ALMA L. CHASEZ
                                               UNITED STATES MAGISTRATE JUDGE